## 9227

### PATTERSON v. HOME BANK OF BARNWELL.

### (86 S. E. 815.)

1. MAGISTRATES—MATTERS REVIEWABLE—EXCEPTIONS—SUFFICIENCY.—An appeal to the Circuit Court on the sole ground "that the judgment was contrary to the law and the evidence" was a sufficient exception, where no specific findings of fact were made.

2. PRINCIPAL AND AGENT—PROOF OF RELATION—TESTIMONY OF AGENT.— Although agency cannot be proved by the declarations of the agent, his testimony in Court as to the agency is admissible to prove both the agency and his acts as agent.

3. APPEAL AND ERROR—PRESUMPTIONS—PROPRIETY OF RULINGS.—Where the Court admits testimony objected to, it must be presumed that it was considered in reaching the conclusion adopted, and, if apparently disregarded, that the Court considered that the other evidence was sufficient to overcome the fact shown by that objected to.

4. EVIDENCE—SUFFICIENCY—PARTIAL RECOVERY.—Evidence that plaintiff's agent signed a note with a third party for a tenant of plaintiff to the defendant bank, and that he, through mistake, waived his principal's lien for rent, while not intending to do more than sign the note, is insufficient to support a judgment for plaintiff against the bank for the amount of the rent due, less one-half of the amount of the note, where plaintiff admits liability for one-half of the note; since, if she was liable at all, she was liable for the whole sum.

Before BOWMAN, J., Barnwell, December 16, 1914. Reversed.

Action by Jane R. Patterson against Home Bank of Barnwell. From a judgment for plaintiff, defendant appeals.

*Mr. Thos. M. Boulware,* for appellant, cites: *As to evidence to prove agency:* 59 S. C. 115; 69 S. C. 327; 89 S. C. 470; 80 S. C. 207; 78 S. C. 457. *No evidence to sustain judgment:* 78 S. C. 457. *Waiver of rent lien:* 2 Cyc. 159; 9 Cyc. 302.

*Mr. James M. Patterson,* for respondent.

November 2, 1915.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Plaintiff sued defendant in the Court of a magistrate to recover $98.09, alleged to be due to her from defendant as the balance of rent of a farm owned by her and let to Robert Robinson for the year 1913, whose crops were seized and sold by defendant under mortgage thereof. Dr. J. Allen Patterson, plaintiff's husband, rented the farm to Robinson, who was to pay 2,500 pounds of cotton as rent. The issues of law and fact will best appear from a statement of the substance of the material evidence.

Dr. Patterson testified:

"Robinson was my tenant. He asked me to advance him. I asked him if his mule, buggy, wagon, etc., were clear. He said Mr. Greene had a mortgage on them for over $900. I told him I could not help him. He came back later, and said he had seen Mr. Greene, and that he would advance him guano, and allow his mules, etc., to be security to the defendant bank, if I would indorse his note at the bank, with Mr. Greene as coindorser, for $100. I took him to Mr. Calhoun, president of the bank, to whom he repeated the proposition. Mr. Calhoun said he understood it, and would submit it to Mr. Greene, and draw up the papers. Later Mr. Calhoun asked me to sign the papers. It was near train time, and I had only a few minutes to catch my train. I told him, as we both understood the agreement, I would sign them, and he could fill them up. In the fall Robinson paid me two bales of cotton. I learned defendant had collected $50 from him. I told Mr. Calhoun that was my rent, and to take it off Robinson's account and give me credit for it. He asked me to let it remain, saying he knew it was Mrs. Patterson's rent, and whenever formal demand was made for it, he would give it up. He asked me to let it remain as a favor to him, and I did so. Later Robinson abandoned his crop, and defendant took charge of it, and gathered it

and sold it.    At that time there was $150 due me for rent.
I told them I would pay half the note I indorsed for $100,
and interest, and this brought the amount due for rent
to $98."

On cross-examination of Dr. Patterson defendant intro-
duced two notes, dated February 24, 1913, and signed by
Robinson, as maker, one for $100, and the other for $87.
Part of this amount appears to have been a balance due the
bank by Robinson on the transactions of the previous year.
On the back of each of these notes was the following:

"For value received I hereby guarantee the payment of
the within note, waiving demand, notice of nonpayment,
protest, and extension.    J. Allen Patterson, T. A. Greene."

They were also secured by chattel mortgage, of same date,
signed by Robinson, covering two mules, two wagons,
buggy, cow, and the crops raised on the Patterson farm,
which was introduced by defendant.    On this mortgage
was the following:

"I, J. Allen Patterson, owner of the land herein described,
same being planted or cultivated by Robert Robinson, ten-
ant, do hereby release unto the said Home Bank of Barn-
well, its successors or assigns, all my right, title, and interest
in and to such crop or crops as are or may be cultivated by
the said tenant to the extent of the interest of said bank.
This 24th day of February, 1913.    J. Allen Patterson.
(L. S.)"

Continuing his cross-examination, Dr. Patterson was
asked if, in these transactions, he was not acting as agent
of the plaintiff.    Plaintiff's attorney objected to the answer,
on the ground that agency cannot be proved by the declara-
tion of the agent.    The magistrate overruled the objection,
and the doctor answered that he supposed he was acting as
agent.    He said further:

"Nothing was said in the agreement about assignment
[waiver] of the rent lien.    I signed the paper in blank, and,
if I had known it was a waiver of the rent lien, I would not

have signed it.   When I demanded the rent from the bank, Mr. Calhoun demurred, and I told him, when he exhausted the security in the mortgage, I would pay half the $100 note; that it was only on account of the security afforded by the mortgage of the personal property that I agreed to indorse it.   When I signed the papers at the bank, I intended the bank to act upon them.   I don't believe the signature on the back of the $87 note is mine."

H. D. Calhoun, president of defendant bank, testified:

"Robinson came to the bank several times in January and February to get his usual accommodations.   Told him the bank would grant it if he got his usual indorser, Mr. T. A. Greene, putting up his stock and lien on crop; the papers being first.   Mr. Greene came in and said he would indorse for him, as usual, and allow him to mortgage his (Greene's) mules, etc., with the understanding that Dr. Patterson would indorse the note and waive the rent.   I prepared the papers, and Robinson signed them.   Mr. Greene said, if Dr. Patterson would indorse the notes and waive the rent, he would indorse them, too, when he came down again.   A few days after I saw Dr. Patterson and told him that Mr. Greene refused to allow his mules, etc., to be mortgaged, unless he would indorse the notes and waive the rent, and told him I had the papers prepared, and wanted him to sign them.   He asked if Greene's mules, etc., were in the mortgage.   I told him they were.   He indorsed the notes, and I said, 'Now, here is the place to sign to waive your rent; as you are in a hurry, sign it, and I will fill it out.'   In signing it he said, 'I don't usually waive my rent to anybody, but, if Tom Greene's two mules are in there, I can't lose;' and he signed all the papers introduced and dashed out.   After Robinson abandoned the crop, Dr. Patterson told me to get some one to gather it.   The indorsements and the waiver of rent and the other security induced the bank to make the loan.   Our impression was that Dr. Patterson always acted as agent for his wife, and we accepted his indorsement and waiver of

rent as such.   The bank received the net proceeds of Robinson's crop, $112.11 and $55, which was paid on his note by Robinson, leaving about $20 still due to the bank.   When Dr. Patterson asked me about the $55 and claimed it as his rent, I said, 'You are acting for Mrs. Patterson, and if you haven't authority, I presume the rent is hers. · Greene has paid nothing on the notes, and the bank has taken no steps to realize on the mortgaged property, which Greene has. Patterson asked me several times to sell the mules, etc.   I told him and Greene to get together, and settle it between themselves.   Greene told me he owned the mules, but consented for Robinson to mortgage them to the bank."

T. A. Greene:

"The mules described in mortgage were mine, I had the oldest mortgage.   I consented for Robinson to mortgage them to the bank."

Upon this testimony the magistrate gave judgment for the plaintiff for $98.07, without giving any reasons at all upon which the judgment was based, and defendant appealed to the Circuit Court upon the sole ground that "the judgment is contrary to the law and the evidence." As there were no specific findings of fact, that form of exception was sufficient.  *McKee* v. *Linton,* 74 S. C. 509, 54 S. E. 1016.

The Circuit Court affirmed the judgment in the following order:

"This matter comes up on appeal from J. F. Tobin, Esq., magistrate, and after argument pro and con, it appearing that the case turned on a question of agency, and the law being, agency cannot be established by declarations of the agent alone, all the facts and witnesses being before the magistrate, and he finding for plaintiff, in my opinion, to reverse the magistrate, the defendant would have to show by the preponderance of evidence that the magistrate committed error of fact.   The testimony failed to convince me of this, and no error was committed."

The exceptions challenge the judgment of the Circuit Court upon two grounds: (1) That the Court erred in its holding as to the proof of agency; (2) that there is no testimony to support the judgment.

It is axiomatic that agency cannot be proved by the declarations of the agent; but that is far from saying that agency cannot be proved by the testimony of the agent, given in Court under oath. The point has been frequently decided in this Court. In *Covington* v. *Bussey,* 15 S. C. L. (4 McCord) 412, the Court said:

"An agent is admitted *ex necessitate* to prove not only his acts as such, but also the fact of his agency."

This principle was reaffirmed in *Black* v. *Goodman,* 17 S. C. L. (1 Bailey) 201, in *Connor* v. *Johnson,* 59 S. C. 115, at page 135, 37 S. E. 240, at page 249, in which the Court said:

"While it is true that agency cannot be proved by the declarations of the professed agent, yet we see no reason why one who is alleged to be the agent of another may not be allowed to prove, by his own direct testimony, that he had been appointed Brown's agent by parol." And in *Chiles* v. *Railway,* 69 S. C. 327, 48 S. E. 252.

It appears, therefore, that the judgment below was influenced by error of law, for the Court said that "the case turned on a question of agency, and the law being, agency cannot be established by declarations of the agent," showing clearly that the Court erroneously confused the mere declarations of an alleged agent, which are incompetent, because hearsay, and the sworn testimony of the agent, which is admissible to prove his acts as agent and the fact of his agency.

As the magistrate overruled the objection to the testimony and admitted it, we must presume that he considered it in reaching his conclusion, and we must presume, too, as

the testimony was sufficient to warrant the finding that Dr. Patterson was agent of his wife, that he concluded that plaintiff was entitled to recover, notwithstanding such agency. But, as the testimony was conflicting upon the issue as to whether Dr. Patterson intentionally signed the waiver of the lien for rent, we have no means of knowing how that issue of fact was decided; that is, whether plaintiff was bound by the waiver or not.

But, assuming that it was decided in favor of the plaintiff, and that the magistrate found that, although Dr. Patterson was the agent of his wife, and had authority to waive the lien for rent, but that she was not bound by the waiver, because (adopting the doctor's version of the matter) he signed it under a misapprehension of the facts—in other words, that he did not agree to waive, and did not intend, in singing the papers, to waive the lien for rent—still there is no testimony upon which the judgment in favor of plaintiff for $98 can be sustained; because the plaintiff, through her husband, admitted at the trial her liability to the defendant on the guaranty of the $100 note, and she practically admitted it also in bringing her action for only $98, the difference between half the amount due on that note (which was, according to Dr. Patterson's testimony, about $52, at the time he proposed to settle in that way) and the balance due her for rent, $150. Now, if plaintiff was liable to the bank at all on the guaranty of the $100 note, as between her and the bank, she was liable for the whole amount due thereon, and not the half of it, as Dr. Patterson seems to have thought, and the bank had the right to set off or counterclaim the whole amount due on that note against her claim for rent. The total amount received by the bank from Robinson and his crop was $167.11. Deducting from that sum the amount due on the note leaves less than $98. So that, even in this view of the case, which is the most favorable for plaintiff under the evidence, the judgment is unsupported by evidence.

As there were no specific findings of fact upon which the rights of the parties can be determined, and as this Court has jurisdiction, in a case like this, only to correct errors of law, and as it is clear that the judgment below was influenced by error of law, the case must go back for a new trial.

Judgment reversed.