15514

WILLIAMS v. TEXAS COMPANY

(24 S. E. (2d), 873)

April, 1942.

334

*Messrs. Woods & Woods,* of Marion, S. C., Counsel for Appellant,

*Messrs. McEachin & Townsend,* of Florence, S. C., and *Mr. S. H. Schoolfield,* of Marion, S. C., Counsel for Respondent,

March 12, 1943.

The majority opinion of the Court was delivered by Mr. Associate Justice Baker:

I find myself unable to concur in the opinion of Mr. Justice Fishburne to the effect that the Circuit Judge should have granted the respondent's motion for a direction of verdict on the ground that the evidence is insufficient to show the authority of the agent, Dowdle, to make the contract upon which the appellant relies. Because of the recognized ability of Mr. Justice Fishburne and the confidence in his views which his opinions always impel, I am reluctant to express a dissent in this case; but after a most painstaking study of the record, I am unable to reach any other conclusion than that the appellant made out a *prima facie* case that entitled him to go to the jury. In this light, the appellant's exceptions in my view include reversible error which should result in the granting of a new trial.

Paragraphs two, three, four and six of the complaint of the appellant allege:

"2. During the month of February, 1937, the plaintiff *was employed as agent* for the defendant for the purpose of purchasing for the sum of thirty-five hundred dollars ($3,-500.00) a filling station site owned by W. P. Clark at the southwest corner of Park and Front Streets in the Town of Mullins, South Carolina. The plaintiff, however, under the terms of his *employment* was given the option of acquiring the property either for the defendant or for himself, and in the event that the plaintiff acquired the property for himself the defendant agreed to enter into a lease contract with the plaintiff, whereby the defendant would lease the property under its standard form of lease at a rental of at least ninety dollars ($90.00) per month, provided the plaintiff would remodel the filling station at his own expense in conformity with plans and specifications prepared and furnished plaintiff by the defendant. (Emphasis added.)

"3. Pursuant to plaintiff's *employment* as above stated, he entered into negotiations with W. P. Clark for the purpose of acquiring the filling station site above mentioned, and he induced the said W. P. Clark to agree to accept thir-

ty-five hundred dollars ($3,500.00) for the property and to make conveyance at any time either to the defendant or to the plaintiff, provided the sum of five hundred dollars ($500.00) was immediately paid to him on the purchase price. (Emphasis added.)

"4. Pursuant to the authority granted to him by the defendant, and acting under its instructions, the plaintiff paid the said five hundred dollars ($500.00) to W. P. Clark with his own funds, and gave notice to the defendant to that effect and that the conveyance of the property could be obtained at any time. No action having been taken by defendant within a reasonable time, in response to plaintiff's notification, the plaintiff thereupon demanded of the defendant that it either take a conveyance of the property and reimburse plaintiff the five hundred dollars ($500.00) spent in defendant's behalf, or otherwise execute the lease contract with plaintiff, in which event plaintiff would take the property himself and remodel it at his own expense according to plans and specifications to be prepared and furnished by defendant, but the defendant has failed and refused to comply with any or either of plaintiff's demands."

\* \* \* \* \*

"6. It having thus become evident that the defendant has repudiated and has no intention of carrying out the arrangement above stated in relation to the above-mentioned filling station site, and that such arrangement will not be carried out by the defendant in any respect, plaintiff is entitled to have refunded to him by the defendant the sum of five hundred dollars ($500.00) *advanced by plaintiff for defendant's benefit and at its request as above stated,* but defendant has refused, and still refuses, to make restitution to plaintiff." (Emphasis added.)

The answer of respondent to the above allegations of the complaint was a general denial; and further answering, and by way of affirmative defense, the respondent alleged that it did not admit that any contract or agreement was entered

into between the plaintiff and defendant, but that such negotiations and conversations as were had in regard to the matters and things set forth in the complaint were between appellant and J. W. Dowdle who had no authority to employ appellant, or any other person, to purchase real estate for its account or to make any contracts to lease real estate acquired by appellant or any other person, and that respondent was informed and believes that this fact was known to the appellant, or that he was in possession of facts from which he must have known that the said J. W. Dowdle had no such authority; further that if such a contract as was set forth in the complaint was entered into between appellant and an agent of the respondent, said contract was of and concerning an estate or interest in, to or out of lands, and was not evidenced by memorandum, deed or note in writing signed by respondent, or by its agent authorized to sign such an instrument, and the statute law of South Carolina is pled in bar of the right of appellant to maintain the action.

The complaint clearly makes out a case of alleged employment of the appellant by the respondent through Dowdle, an agent of respondent, and the expenditure by the appellant of $500.00 for the purpose of accomplishing the stated object of the agency and employment.

As Mr. Justice Fishburne points out, the Statute of Frauds is not involved in that situation, and in my opinion there is testimony sufficient to go to the jury on the alleged employment of the appellant if the employment was effected by an authorized agent of the respondent.

It may be conceded, in my view of the case, that the agent of the respondent, who handled this matter with the appellant, had no authority to sign the name of the respondent to a lease or to a contract for the purchase of real estate. But the matter of finding suitable locations, and of initiating negotiations with owners for the purchase or lease of such locations was admittedly within the authority

of the respondent's agent, Dowdle, and of his successor, Neeley. These men were not ordinary agents. They were *zone managers,* with jurisdiction over a considerable number of counties in the State. An essential part of their business consisted of doing the very thing which the appellant says was done in this case, to wit, selecting locations and doing whatever was necessary to put the respondent in position to act on the purchase or lease of the locations. As a practical matter, in the real estate field it is frequently indispensable to employ brokers or others to find and tie up locations for corporate organizations, pending consideration of the locations through the devious channels of the corporate setup. Certainly the respondent would not want to spend the time of its organization in considering a purchase or lease involving substantial expenditures unless a situation has been created in which the owner of the property has definitely agreed to sell or lease in the event that the corporation finally approves the proposed transaction.

It would be within the contemplation of the respondent that Dowdle would follow the usual course of seeking aid from others in carrying on his duties, and in paying for such aid on any reasonable basis. If his authority extended to employment of others for that purpose, would it not extend to legitimate disbursements made by the persons employed, when such disbursements are made at Dowdle's specific request?

In other words, does the case not finally resolve itself into the proposition that the appellant claims that he was employed by Dowdle and directed by Dowdle to advance money within the scope of the employment, and that Dowdle acted in these connections under an admitted scope of authority so wide as to territory and so highly executive and important in character and extent, that it would be unreasonable to deny to him as a matter of law the implied authority to do what the appellant says was done in this case.

The dictum so often expressed that one deals with an agent at one's peril, from the standpoint of the agent's authority, might be all right in dealings between individuals relating to their personal affairs; but in the complex business structure of today, where gigantic corporations operate in thousands of communities through regional and other executives who of necessity deal in their particular areas with the business of their principals, it seems to me that an executive agent of a large corporation should be held to have such authority as may be reasonably deduced from the scope of his activities, and that the protection of the corporation must come not from subjecting the public to the risk of dealing with such men at their peril, but from the employment of agents who have the integrity to notify the people with whom they deal of any actual limitations on their authority.

The general principles I have stated find some support in the case of *Barrett v. Texas Co.*, 174 S. C., 45, 176 S. E., 847, and *Swift & Company v. Callaham*, 133 S. C., 353, 131 S. E., 146.

In 2 C. J. S., Agency, § 95, pp. 1203, 1204, the rule is thus stated:

"The authority of the agent is to be tested and determined by the character bestowed upon the agent and not by the instructions given him by the principal, so far as innocent third persons are involved, so that acts or transactions may be within the sphere wherein an agent can impose liability on the principal although outside of the agent's authority as qualified by private instructions.

" * * * Third persons may deal on the faith of such apparent authority without being bound by such limitations, it being sufficient to render the instructions or limitations nugatory that the agent's acts in the premises are reasonable and such as would ordinarily be done by a person having the authority apparently exercised by the agent, or, more briefly stated, that they come within the scope of his apparent

authority. Knowledge or notice of the limitations upon apparent authority is essential to charge those dealing upon the faith of such authority with the consequences of the limitations.

"It is probable, however, that in so stating the rule the courts are not necessarily thinking of apparent or ostensible authority in the strict technical sense in which that term is discussed in the succeeding section, for while among the authorities cited to the effect that private instructions do not countervail as against apparent authority there are many which do involve that type of authority, in many others the powers involved seem properly classifiable as implied rather than apparent in nature, so that in speaking of apparent authority the cases evidently use the term as signifying any power which the agent *prima facie* possesses, without regard to the distinctions between actual, implied, and apparent or ostensible authority.  *  *  * "

In the same text, § 136, Subsection b, at page 1360, the author says as to the appointment of subagents:
"Where the act to be done involves no element of personal trust or confidence, as where it is ministerial or mechanical only, the agent may employ another to do it; and in such case the act is as well performed by the subagent as by the agent, and will be regarded as the act of the agent and accordingly will be binding on the principal. So, where an agent has exercised his discretion and determined upon the propriety of an act, the execution of merely mechanical, clerical, or ministerial acts involving no judgment or discretion may be delegated.  *  *  * "

In the present situation, Dowdle himself determined upon the acquisition of the station location, and upon the price at which it was to be purchased or leased by the respondent. The task he delegated to appellant involved none of the fundamentals of the exercise of discretion or trust or confidence which were essential to the furtherance of the business committed to Dowdle.

Of course, all of this involves jury issues based on the facts of each particular case.

It does not appear to me just to say to these great organizations with whom the public must of necessity deal through regional representatives acting under undisclosed instructions that their tedious methods of running transactions through their various departments can be used as a sword to obtain free service all over the country, rather than as a shield to protect them against the acts of agents who might try to mulct them through obviously fraudulent transactions.

The Circuit Judge in his charge states the case very much as I have stated it, but of course he nullifies this aspect of the case by going into the subject of the Statute of Frauds, and he deprived the appellant of the benefit of this view of the case by refusing to permit the appellant to prove the actual scope of Dowdle's authority by showing the pertinent transactions undertaken by Dowdle in carrying out his duties.

It appears to me that there is reversible error in the exclusion by the Circuit Judge of testimony relating to other similar transactions handled by the agent, Dowdle. Such transactions would furnish persuasive evidence of Dowdle's *actual* authority. And it does not appear to me to be material whether the appellant knew of such transactions or not at the time he dealt with Dowdle.

Further reversible error is found in the refusal of the Circuit Judge to charge the jury as requested by appellant relating to the Statute of Frauds, as follows:

"1. The affirmative defense set up in the defendant's answer pleading what is therein referred to as the Statute of Frauds are not applicable in this case, and they need not be considered by you, because they constitute no defense to plaintiff's cause of action.

"2. In order for plaintiff to recover in this case it is not necessary that the contracts referred to in the complaint

should be in writing, and the fact, if it is a fact, that such contracts were not in writing is no defense and need not be considered by you."

This error was accentuated by.charging the jury at length on the applicability of the Statute of Frauds to states of fact which are not within the theory upon which the action was brought and tried.

It is my opinion that the judgment appealed from should be reversed and the case remanded for a new trial.

MR. ASSOCIATE JUSTICE STUKES and CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE, concur.

MR. ASSOCIATE JUSTICE FISHBURNE (dissenting) :

This is an appeal from a judgment in favor of the respondent, the Texas Company, in an action brought by R. J. Williams, appellant, to recover the sum of $500.00 alleged to be due him by the respondent.

The plaintiff, Williams, sets forth in his complaint that during the month of February, 1937, he was employed by the Texas Company, through its zone representative, J. W. Dowdle, as an agent to purchase for the company a filling station and site owned by one W. P. Clark, in the town of Mullins, South Carolina, for the sum of $3,500.00 with the option to the plaintiff, if he should so desire, to purchase the property for himself. In the latter event, it is alleged that the Texas Company agreed that it would enter into a contract with the plaintiff, leasing the property from him under the company's standard form of lease, at a rental of not less than $90.00 per month, provided plaintiff would remodel at his own expense the filling station building on the premises, in conformity with the plans and specifications furnished by the company.

Pursuant to this agreement, he testified that in February, 1937, he interviewed Mr. Clark, who agreed to sell the filling station site for $3,500.00, and he thereupon paid Mr. Clark the sum of $500.00 as part payment on the purchase price, and promptly notified the agent, Dowdle, that a con-

veyance of the property could be obtained at any time. Approximately three months after the negotiations with Clark, the plaintiff says he was notified by Dowdle that the company had decided not to buy any more filling stations, but that the company would lease the station from him for ten years if he would buy it himself. He then elected to buy the property and lease it to the company. However, he never obtained title, nor was any lease with the company consummated; although it appears that if the company had carried through its alleged agreement with him, title could have been obtained. Prior to the bringing of this action, plaintiff demanded of the company that it either take a conveyance of the property or enter into a lease contract, or refund to the plaintiff the sum of $500.00 expended by him in defendant's behalf. None of these demands was complied with.

Defendant denied the material allegations of the complaint, and alleged by way of affirmative defense that if the transaction referred to in the complaint occurred at all, it was entirely between the plaintiff and J. W. Dowdle, who had no authority to enter into any contract with the plaintiff, or with any other person, for the purchase or lease of real estate for its account; and that in any event the Statute of Frauds was a bar to plaintiff's cause of action.

At the conclusion of the testimony, the defendant moved for a directed verdict in its favor, but the motion was overruled, and the case having been submitted to the jury, a verdict for the defendant was returned. A motion for a new trial was overruled, and the case is now before this Court on the plaintiff's appeal.

The alleged contract between the plaintiff and the defendant was not reduced to writing, and during the progress of the trial the Court ruled that the Statute of Frauds was not applicable, assigning as the reason therefor that the plaintiff was not suing for specific performance nor for damages for a breach of the contract, but solely for a restoration of the $500.00 paid out by him upon the faith of the parol con-

tract. This construction of the complaint I think is correct, as will be seen by reference to the case of *White v. Mc-Knight,* 146 S. C., 59, 143 S. E., 552, 555, 59 A. L. R., 1297, where, quoting from 27 C. J., 359, it was held: "Although part performance by one of the parties to a contract within the statute of frauds will not, at law, entitle such party to recover upon the contract itself, he may nevertheless recover for money paid by him or property delivered, or service rendered in accordance with, and upon the faith of, the contract. The law will raise an implied promise on the part of the other party to pay for what has been done in the way of part performance."

The main issue in the case, and the theory upon which it was tried, was whether or not J. W. Dowdle was an agent of the defendant, and if so, was the alleged contract entered into by him with the plaintiff within the actual or apparent scope of his authority. While it was considered that the plaintiff's action was not based upon the alleged contract, in that no specific performance was demanded, nor damages sought for its breach, yet the burden was upon the plaintiff to prove that a contract existed as a prerequisite to recovery.

It is admitted that Dowdle was the agent and zone representative of the Texas Company, but no reasonable inference may be drawn from the evidence that he had authority, actual or express, to make the alleged contract with the plaintiff, dealing with the purchase or lease of real estate; hence the issue narrows down to whether or not he entered into this alleged contract with the plaintiff within the apparent scope of his authority. This issue was presented to the Court at the conclusion of all the testimony, when the defendant moved for a directed verdict in its favor upon the ground, among others, that the testimony is susceptible of no other reasonable inference than that Mr. Dowdle did not have authority to buy or lease the property, or to make a binding contract to that effect with the plaintiff. The refusal to direct a verdict is now advanced by the defendant as

an additional ground to sustain the judgment. In our opinion, after a full consideration of the evidence, and viewing it in the light most favorable to the plaintiff, this motion should have been granted.

There are certain rules and principles of law governing the apparent authority of an agent which should be stated before we discuss the facts bearing upon this issue:

"The apparent or implied authority of an agent cannot be so extended as to permit him to depart from the usual manner of accomplishing what he is employed to effect. Nor can he enlarge his powers by unauthorized representations and promises. Of course, the principal is not bound where the agent exceeds the scope of his apparent authority and his want of authority is known to the person dealing with him, or if the third person actually knows, or should know, the limitation of the agent's authority. Moreover, the apparent authority for which the principal may be liable must be traceable to him, and cannot be established solely by the acts and conduct of the agent; the principal is only liable for that appearance of authority caused by himself. It must also appear, in order that the person may invoke the doctrine of apparent authority, that he will sustain a loss if the agent's act or contract is not binding on the principal. Furthermore, a party dealing with an agent must prove that the facts giving color to the agency were known to him when he dealt with the agent, and that he believed the agent was acting within his authority; if he has no knowledge of such facts, he does not act in reliance upon them and is in no position to claim anything on account of them." 2 Am. Jur., Section 103, page 85.

"With respect to the derivation of the agent's apparent authority to begin with, the power and authority of an agent may safely be deemed by persons dealing with him in good faith to be at least equal to the scope of the duties ordinarily conferred upon agents or agencies of that character. Apparent authority may also be, and often is, derived from a

course of dealing or from the fact that a number of acts similar to the one in question were assented to, ratified, or not disavowed by the principal. The acquiescence of the principal in an extension of his authority by an agent in the transaction in question may be sufficient to create the appearance of authority in the agent to do such act; the acquiescence in, and consequent scope of, such authority, is to be determined not only by what the principal actually does know of the acts of the agent within the employment, but also as to what he should, in the exercise of ordinary care and prudence, know the agent is doing in the agency transaction." 2 Am Jur., Section 102, page 83.

A person dealing with a known agent is not authorized under any circumstances blindly to trust the agent's statements as to the extent of his powers; such person must not act negligently, but must use reasonable diligence and prudence to ascertain whether the agent acts within the scope of his powers. *Colt Company v. Britt,* 129 S. C., 226, 123 S. E., 845; *Sells Lumber & Mfg. Company v. Carr Lumber Company,* 179 S. C., 407, 184 S. E., 674. Apparent authority, or ostensible authority, as it is also called, is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing. *Derrick v. Sovereign Camp, W. O. W.,* 115 S. C., 437, 106 S. E., 222.

It is said in 2 C. J. S., Agency, § 96, pages 1213, 1214:

"The recognized duties and conceded authority of the agent are of material significance in the determination of what the third person in the exercise of reasonable prudence is justified in believing as to the agent's powers. A course of conduct, a number of acts assented to or not disavowed, may and frequently does serve to create an apparent authority. Where the principal gives verisimilitude to the mandate which the agent appears to possess, by a course of conduct, from which the agent is made to seem to have the powers which he undertakes to exercise, and thereby induces

others to act in a good faith belief in their having been conferred, an ostensible authority arises precluding the denial of the verity of such mandate as to matters falling within that course of dealing.

"Of course, no apparent authority grounded upon a course of conduct is assertable in the absence of even a single precedent act or transaction to manifest the existence of the power claimed; a course of conduct of a particular character does not exist where there is an utter absence of any conduct whatsoever of the character supposed."

The testimony for the plaintiff shows that he had a conference with Mr. Dowdle in the office of the Texas Company at Florence, South Carolina, at which were present Dr. McMillan, who was to become the company's local distributor at Mullins, and Mr. C. P. Hodges, an employee of the company. The plaintiff says that it was on this occasion that Mr. Dowdle told him to buy the Clark property for $3,500.00, and that the Texas Company would either lease it or purchase it from him. Mr. Hodges in his testimony confirms this statement, and he further testified that Mr. Dowdle's duties were those of a salesman in obtaining outlets and in procuring and obtaining the sale of gasoline and other products of the Texas Company through local distributors and filling stations. He said that he went with Mr. Dowdle on several occasions and secured some station sites by way of lease, but not by way of purchase.

However, it does not appear from this evidence that Dowdle had ever executed any lease on behalf of the company, or engaged in anything of this kind except by way of negotiation and recommendation. Even if it could be inferred that Dowdle actually had consummated such a transaction, there is no evidence to show that the plaintiff knew of such facts, or other facts which would give color to the agency.

The plaintiff was district manager for the Jefferson Standard Life Insurance Company, and through him loans

were frequently negotiated and made by this insurance company upon filling stations leased by the Texas Company from the owners. On one occasion it appears that he took Mr. Dowdle with him to Greensboro, North Carolina, the home office of the insurance company, together with one of these prospective borrowers, but there is nothing in the evidence to show that Mr. Dowdle, as the agent of the Texas Company, was interested in the matter other than to further the sale of the company's products through the local distributor, or that he had anything to do with the execution of a lease.

After the plaintiff was told that the defendant would not purchase the Clark filling station site, steps were taken by him to lease the property to the company, dependent upon his obtaining title thereto. With reference to the consummation of this proposed lease, he, time and again, stated that he knew that such lease would have to be approved at the home office of the Texas Company. It is true that he qualified this statement somewhat by using the term "confirmed" in place of "approved", but this is a distinction without a difference.

In the case at bar, there is no feature of ratification, adoption, or estoppel upon which the liability of the Texas Company may be predicated, independent of any supposed apparent authority of the agent. There is no reasonable inference that the Texas Company in any instance ever permitted Dowdle to enter into a contract on its behalf for the lease or purchase of realty for use as a service station; nor is there evidence that the plaintiff knew of such practice.

In the case of *Carr v. Moragne,* 136 S. C., 218, 131 S. E., 424, 425, 43 A. L. R., 1212, the Court quoted with approval:

"An agency may be implied from the recognition or acquiescence of the alleged principal, as to acts done in his behalf by the alleged agent, especially if the agent has repeatedly been permitted to perform acts like the one in question." 2 C. J., 443; 2 C. J. S., Agency, § 23, Subsec. f.

"It has been held that a general agency to do certain acts cannot be implied from the alleged agent having occasionally done acts of a similar nature or from a single isolated transaction. But, on the other hand, it has been held that a single act of an assumed agent and a single recognition of his authority by the principal, if sufficiently unequivocal, positive, and comprehensive in their character, may be sufficient to prove an agency to do other similar acts." 2 C. J., 442; 2 C. J. S., Agency, § 23, Subsec. e.

Under the evidence in the case at bar, however, there is not even a single isolated transaction of a similar nature known to the plaintiff, and acquiesced in or recognized by the respondent, upon which to base the conclusion that Mr. Dowdle was acting with apparent authority. Under any rule other than that stated above, every principal would be at the mercy of his agent, however careful he might be to limit his authority. If we adopt any other rule, the result would be that no one who undertook to deal through an agent could control the extent of his obligations.

Reliance of itself is not sufficient; a mere blind confidence is incapable of giving rise to an ostensible authority. The test is not what the third person with whom the agent deals actually believes to be the authority of the agent, nor by what the appearances might lead someone else, differently circumstanced, to believe, but what, under all the surrounding circumstances, he is justified, acting as a reasonable man, in believing it to be upon the basis of the principal's acts and conduct. 2 C. J. S., Agency, § 96, page 1218.

In view of these well-settled principles, the only conclusion I have been able to reach upon the undisputed facts is that the evidence is not legally sufficient to support the theory of liability upon which the suit depends.

Appellant assigns error because the Court excluded the testimony of the plaintiff relating to a transaction which he had with another person. It is contended that this testimony was offered as a circumstance tending to prove agency or

apparent agency in connection with the transaction involved in this case. The excluded testimony had to do with a proposed loan from the Jefferson Standard Life Insurance Company to one E. T. Rogers in connection with a filling station, and it appears that the plaintiff had discussed this proposed loan with Mr. Dowdle. While it may be inferred that Mr. Rogers, if he secured the loan, would open a filling station under a lease with the Texas Company, it nowhere appears that any contract had been made between him and Mr. Dowdle, or through Mr. Dowdle with the Texas Company. Even though the evidence was cumulative, and might have been admitted upon the theory of some remote relevancy, we do not think the plaintiff suffered any prejudice from its exclusion. The admission of this evidence could in no way have strengthened the plaintiff's case.

The appellant complains that certain remarks of the Circuit Judge addressed to the plaintiff while on the witness stand constituted prejudicial error. It is contended that the trial Judge took issue with the plaintiff as to what he had previously testified to. The precise point of difference between plaintiff and the Circuit Judge was as to whether or not Mr. Clark, the owner of the filling station involved in this case, when approached by the plaintiff, had said that he would not sell the property to the Texas Company. The plaintiff testified that he could not recollect that he had so testified.

The record discloses the following relating to this exception: .

"Q. (By Mr. McEachin) I believe you testified on direct examination that Mr. Clark told you when you approached him that he wouldn't sell it to the Texas Company? A. No, sir.

"Q. You deny making that statement? A. I didn't make that statement.

"The Court: I understood somebody didn't want to deal with somebody.

"Witness: It wasn't the Texas Company.

"Q. Who was it you said Mr. Clark wouldn't deal with? A. Dr. McMillan.

"Q. Are you sure of that? A. Certain of it.

"Q. And you deny that you said on your direct examination that Mr. Clark told you that he wouldn't deal with the Texas Company? A. I don't recall saying so.

"The Court: The record shows, but between me and you I think you did say it. You may not have said it. You want to take that back and say you didn't say it?

"Witness: Yes, sir.

"Q. You mean you want to take it back? A. If I said it.

"The Court: I don't mean take it back; I mean correct it.

"Witness: Yes, sir; correct it."

I do not think the statement made by the Circuit Judge was prejudicial. The plaintiff had testified: "Mr. Clark said he would sell it to me straight out; that he didn't want to have any dealings with the Texas Company people or Dr. McMillan, but would sell to me."

It is apparent, I think, that the trial Judge by his interjection did not express or indicate any opinion upon the weight or sufficiency of the evidence, reasonably calculated to influence the jury. The plaintiff in his testimony had seemingly made a contradictory statement which appeared to the trial Judge to have been inadvertently made. His interrogation merely afforded the plaintiff an opportunity to correct his previous testimony.

The case of *Lusk v. State Highway Department*, 181 S. C., 101, 186 S. E., 786, where a reversal was ordered on an entirely different state of facts, is not in point.

Error is assigned because the Court permitted the defendant's witness, Dowdle, to give parol testimony as to the scope of his duties as an agent, when it appeared that circular letters were issued from time to time outlining such duties, which were not introduced in evidence. Aside from the fact that no clear-cut objection was offered to the ad-

mission of this evidence we think the exception is without merit. Respondent's counsel announced that the circular letters were not in their possession, and that no notice to produce had been served. The Court ruled that the witness could testify as to his duties, and he thereupon testified that he had no authority to make a contract for the purchase or lease of realty, and specifically denied entering into such a transaction with the plaintiff. He said that the plaintiff knew that his powers were limited to negotiation and recommendation.

Agency cannot be proved by the unsworn declaration of an alleged agent, standing alone, but agency, as well as its nature and extent, may be proved by the agent's direct testimony. *Patterson v. Home Bank of Barnwell*, 102 S. C., 434, 86 S. E., 815; *Kean v. Landrum*, 72 S. C., 556, 52 S. E., 421; Wigmore on Evidence, Volume 4, Section 1249, page 478.

The appellant also assigns as reversible error certain instructions given by the Judge to the jury with reference to the Statute of Frauds. However, the issues raised by these exceptions become academic. In my opinion a verdict should have been directed in favor of the defendant and the judgment should be affirmed.

This opinion was prepared as the leading opinion, but a majority of the Court having dissented, therefore, it becomes a dissenting opinion.